IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HEATHER VINES § | |
| § | |
| V. § | |
| § | A-05-CA-763 SS |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
      UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff's Brief (Clerk's Doc. No. 15); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 16); Plaintiff's Reply Brief (Clerk's Doc. No. 19); and the Social Security Record filed in this case (Cited as "Tr."). The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. PROCEDURAL HISTORY**

Plaintiff Heather Dawn Vines ("Plaintiff") applied for Supplemental Security Income disability benefits on March 18, 2003.[1]  Her application was denied initially and again upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which

---

[1]The Leads/Protective Filing Worksheet included in the record indicates a date of March 18, 2003. Tr. 67. Defendant's Brief in Support of the Commissioner's Decision indicates that the date of the Plaintiff's application for SSI was April 22, 2003, the date the Plaintiff's application was received and filed. Tr. 68. The ALJ indicated that the application was filed on March 18, 2003. Tr. 251.

was held on February 15, 2005. The ALJ denied the Plaintiff's claim in a decision issued April 29, 2005. Plaintiff appealed this decision to the Appeals Council. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 27, 2005. On September 16, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II. ISSUES PRESENTED

Plaintiff raises the following issues: (1) whether there is substantial evidence in the record supporting the Commissioner's finding that the Plaintiff's impairments do not meet or medically equal one of the listed impairments in the Listings of Appendix 1, Subpart P of 20 C.F.R. § 404; (2) whether the ALJ properly considered the testimony of the vocational expert; and (3) whether the Commissioner properly considered the Plaintiff's evidence submitted after the date of the ALJ's decision.

## III. STATEMENT OF THE CASE

At the time of the February 15, 2005 administrative hearing, the Plaintiff was 34 years old with an eleventh grade education. Plaintiff complained that she was disabled and unable to engage in any substantial gainful activity due to tumors in her right foot, extensive nerve damage, and severe pain. Plaintiff was represented at the hearing by her attorney Ms. Susan Carpenter.

**A.     Plaintiff's Testimony**

Plaintiff testified that she was 34 years old, right handed, 5' 7" tall, and single. Tr. 250. Plaintiff testified she has two minor children, both of whom were living with her at the time of the

hearing. Tr. 251. She stated she had completed the eleventh grade, did not receive a GED, and did not have any other education. Tr. 252.

Plaintiff testified the only work she had performed since March 18, 2003 was some baby-sitting for about five months in early 2004, earning between $30 to $50 per week. Tr. 251. Plaintiff testified that in the past 15 years, going back to 1990, she had worked as a line server, a telemarketer, and a home health aide. Tr. 253. Plaintiff testified that she stopped working as a part-time home health aide in 2002 because of her foot problems and all the "running around" was too much for her. Tr. 255.

Plaintiff testified that since 1995, she had undergone two foot operations for tumor removal, and one girdle stone operation.[2] Tr. 255. Although Plaintiff had not suffered any recurring tumors since this last surgery, Plaintiff stated that her doctor had informed her that her tumors would return. Tr. 255. In July 2004, Plaintiff testified that she underwent a capsulectomy to alleviate severe foot pain. Tr. 256. Although Plaintiff was instructed to have a follow-up appointment with her doctor, Plaintiff testified she never did so because she was no longer covered under Medicaid. Tr. 257. Plaintiff testified that between April 2003 and July 2004, her doctor never talked to her about releasing her back to work. Tr. 257.

Plaintiff testified that before her foot operation, her pain was constant and severe pain (8 on a scale of 1-10),[3] primarily affecting the top and bottom of the last three toes on her foot. Tr. 258. Plaintiff testified that her pain increased after her foot operation and capsulectomy. Tr. 258.

---

[2]The ALJ refers to the girdle stone surgery as a dorsal capsulectomy. Tr. 255.

[3]The ALJ asked the Plaintiff to rate the pain on a scale of 1 to 10 (1 being completely pain free; 10 being such an intense pain that she would go to an emergency room).

Plaintiff testified that at the time of the hearing, she felt pain on the top and the bottom of the last three toes of her foot, as well as from the right hand side of her back, down the back of her leg, to the bottom of her foot. Tr. 258. Plaintiff testified that her fourth toe was very tender and that she was unable to wear socks or closed toed shoes and thus could only wear flip-flops due to the pain. Tr. 264. Plaintiff further added that she has to sleep with her foot off of the bed, which caused problems with her back. Tr. 264.

Regarding her back pain, Plaintiff testified that she initially experienced back pain in 2000 and that she again experienced such pain about one month prior to the hearing before the ALJ in this case. At the time of the hearing, Plaintiff testified that she was experiencing constant back pain. Tr. 259. Plaintiff testified that on an average day, where she had taken all her medicine, the pain in her foot rated a 9, while her back pain rated a 10. Tr. 260.

Plaintiff testified she occasionally uses a cane, even though one was never prescribed to her. Tr. 261. Plaintiff further stated that she uses crutches when the pain becomes really severe. Tr. 261. Plaintiff testified she was taking pain relievers and muscle relaxers for her pain. Tr. 261. Plaintiff testified she could probably walk approximately one block before experiencing severe foot pain. Tr. 262. Plaintiff testified that since her last surgery, she was instructed by a nurse to prop her foot up (above her waist) in order to avoid pain and swelling. Tr. 263.

Regarding her daily activities, Plaintiff testified she does all her housework without putting weight on her foot. Tr. 264. Plaintiff testified she has difficulty sleeping. Tr. 264. Plaintiff testified she could not walk her children to school and thus her mother has to pay for a taxi to take her children to and from school. Tr. 265.

**B.     Vocational Expert Testimony**

Sally Mickel, a vocational expert ("VE") also testified at the hearing. Tr. 266-268. Ms. Mickel testified that Plaintiff's former job as a telephone solicitor was classified as sedentary, semi-skilled work with a SVP of 3. Tr. 266. Ms. Mickel testified such a job would probably allow an employee to prop her leg up a few inches, and that more than two absences in a 30-day period would jeopardize such employment. Tr. 267. Ms. Mickel testified that the need for a hypothetical employee to prop her foot up 14 to 15 inches could also interfere with sedentary work. Tr. 268. Ms. Mickel further testified that most employers have a dress code which would not permit flip-flop sandals. Tr. 268.

**C.     Medical Records**

Plaintiff alleges that she has been disabled since the date of her application for supplemental security income, due to pain from chronic, recurring massive giant cell tumors in her foot. The following is a summary of the Plaintiff's medical records that are relevant to the issues presented in the instant case.

On October 6, 1995, the Plaintiff's right foot was evaluated after she complained that she had experienced several months of pain. Tr. 196. On October 26, 1995, an MRI of her foot indicated a large soft tissue tumor surrounding the fourth metatarsal. Tr. 195. On November 11, 1995, the Plaintiff underwent the excision of a mass (giant cell tumor) from the dorsum and planter aspect of her foot and no complications were noted. Tr. 195. Her records indicate that after the procedure, Plaintiff had decreased sensation in her fourth and fifth toes. Tr. 194. Plaintiff was instructed not to bear any weight on the foot. Tr. 194. On December 21, 1995, Plaintiff indicated she was still

having some pain. Although the examination showed that her fourth toe was still numb, as expected, Plaintiff was instructed to increase her weight bearing on the foot. Tr. 194.

On August 10, 2000, Plaintiff, complaining of pain and decreased sensation in her foot, was seen for a follow-up examination. The examination revealed that her foot appeared to be normal and no swelling was noted. Although Plaintiff had decreased sensation along her fourth toe, X-rays proved to be normal. Tr. 193. On August 21, 2000, results of an MRI indicated a small recurrence of the giant cell tumor. Plaintiff complained that pain radiated up the posterior aspect of her leg, but denied any back pain. Her physician's notes indicate that Plaintiff has paresthesias [skin sensation with no apparent physical cause]. On September 19, 2000, results of an MRI on Plaintiff's back showed a small bulge at L5-S1. Plaintiff complained of pain that radiated down from her leg to her foot. The examination showed that Plaintiff had metatarsalagia [a cramping burning pain in the metatarsal bones] and that she was very tender to direct compression over her metatarsal head. Tr. 192. On October 6, 2000, Plaintiff complained that she felt a burning sensation in her knee while standing in her kitchen. On examination, Plaintiff was found to have full range of motion and her knee was noted to be stable. Tr. 191.

On January 20, 2003, Plaintiff complained of pain in her fourth ray of her foot. The exam showed that Plaintiff's foot was normal, except for the fourth ray. Tr. 175. The MRI indicated two enhancing soft tissues were apparent along the course of the distal fourth metatarsal. Tr. 189. On February 10, 2003, Plaintiff continued to complain of pain and was instructed to undergo another tumor excision. Tr. 174. On April 1, 2003, Plaintiff underwent right foot fourth metatarsal excision of giant cell tumors which proved to be routine and was tolerated well by the Plaintiff. Tr.171.

On June 16, 2003, Plaintiff's exam report from Austin Radiological Association indicated that there were no bony or soft tissue abnormalities in Plaintiff's right foot and noted that Plaintiff had a normal right foot. Tr. 144. In an Orthopedic Narrative dated June 16, 2003, the Plaintiff was diagnosed with tendinitis extensors and complications of surgery of the right foot. The report noted that Plaintiff demonstrated marked restriction of functional activities of the right foot due to the tendinitis of the extensor tendons which would affect prolonged standing and walking. The report also indicated that Plaintiff's orthotic was of no value. Tr. 152-153. On June 23, 2003, Plaintiff's orthopedic examination report indicated limited range of motion in the fourth metatarsal and noted that Plaintiff needed an ambulatory device for a stiff sole shoe and was presently unable to do prolonged standing or walking. The report diagnosed Plaintiff with recurrent giant cell tumor of the foot with a high rate of recurrence. Tr. 159-161.

Form FDDS 416 from the Office of Disability Federal Disability Determination Services, dated July 1, 2003, indicated that Plaintiff's MS impairment was severe but that it was not expected to last for more than 12 months. The form also indicated the Plaintiff's tumors were slow growing, benign, and noted that they may recur. Tr. 147.

Plaintiff's Consultative Examination on October 20, 2003, indicated recurrent giant cell tumors of the right foot with subjective pain remaining following surgery. Notes indicate the Plaintiff appeared to be capable of performing activities such as sitting, standing for limited periods of time, moving about for short distances, handling objects, hearing and speaking. Tr. 140-142. A case analysis dated October 21, 2003, indicated that Plaintiff's foot impairment was severe, but that the severity did not meet or equal the listing. Tr. 128. A report dated October 21, 2003, indicated the Plaintiff could stand and/or walk with normal breaks for a total of 6 hours in a 8-hour workday

and sit with normal breaks for a total of about 6 hours in an 8-hour workday. Tr. 130. That report also noted objective findings indicating that the limitations suggested in the Consultative Examination of October 20, 2003, were too restrictive. Tr. 135.

On February 4, 2004, the Plaintiff complained of pain over the fourth metatarsal. The MRI showed no new tumor and Plaintiff was diagnosed with metatarsalagia and a cock-up deformity with slight hammertoe of the fourth toe. Treatment plans called for extensor Z-plasty and capsulotomy with a Girdlestone-type tendon transfer to correct the hyperextension and claw toe. Tr. 185. On July 9, 2004, Plaintiff underwent extensor tendon lengthening and a dorsal capsulectomy and debridement for an extension deformity of the right fourth toe. Tr. 178. Progress notes from July 23, 2004, indicate the toe was in excellent position. Tr. 181. On November 16, 2004, Plaintiff was diagnosed at Brackenridge Hospital with acute exacerbation foot pain and was referred to the Northeast Austin Clinic. Tr. 205.

On January 31, 2005, Plaintiff was diagnosed with acute exacerbation of chronic low back pain and lumbar pain/strain. Plaintiff's condition was stable, and was prescribed medication, ice and heat, and supportive care. Tr. 237. On February 11, 2005, Plaintiff complained of back pain that ran down her leg. Plaintiff underwent an MRI and was referred to a Pain Clinic. Tr. 232. On February 17, 2005, results from the MRI indicated no anterior-posterior subluxatin, a normal conus medullaris, no marrow edema visible, and normal visualized paraspinous soft tissues. Tr. 228. On February 18, 2005, a MRI scan review indicated lumbar back pain and Plaintiff was again referred to the Pain Clinic. Tr. 233.

## IV.  FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, consideration of the vocational expert's testimony, as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Based upon the medical evidence, the ALJ determined that Plaintiff's impairment of removal of benign tumor of the right foot was considered "severe" based on the requirements in the Regulations, but not severe enough to meet or medically equal one of the listed impairments on the Listing of Impairments in the Social Security Regulations.  Tr. 21.

The ALJ also found the Plaintiff's allegations regarding her limitations were not totally credible, and found that Plaintiff retains the residual functional capacity, despite her impairments, to perform a wide range of sedentary work activities.  The ALJ found Plaintiff's past relevant work as a telephone sales person was not precluded by her residual functional capacity and that her medically determinable impairment does not prevent her from performing her past relevant work. Accordingly, the ALJ found that Plaintiff was not "disabled" within the meaning of the Act.

## V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard.  *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*,

707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

## VI. ANALYSIS

Plaintiff argues that substantial evidence in the record did not support the ALJ's finding that Plaintiff's impairments do not meet or medically equal one of the impairments in the Listings of Appendix 1, Subpart P of 20 C.F.R. § 404. Plaintiff argues that her foot condition qualifies as a disability and argues that the ALJ erred in finding otherwise.

To determine disability, the Commissioner uses a five-step analysis. The first two steps involve determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. *Id*. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. *Id*.

If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. *Id*. At these steps, the analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of the claimant's age, education, and work experience. *Id*. If the claimant cannot do his past work or other work, the claimant qualifies for benefits. *Id*. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step, if it is reached. *Id*. If at the fourth step, the ALJ determines that the claimant is capable of doing his past relevant work, there is no disability. *See* 20 C.F.R. § 404.1520; *Frazier v. Chater*, 903 F.Supp. 1030, 1034 (N.D. Tex. 1995).

The ALJ found Plaintiff not disabled based on the fourth step. The ALJ determined that Plaintiff was able to perform her past relevant work as a telephone sales person. The Court finds that based upon the evidence in the record before the ALJ, the ALJ's determination was based upon substantial evidence.

**1.   Did the Commissioner properly consider evidence of a Listing level impairment?**

Plaintiff asserts the ALJ erred in determining that Plaintiff's foot condition did not meet or medically equal one of the listed impairments, specifically Listing 1.08. Listing 1.08 lists, as a category of impairments: "Soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M,[4] directed toward the salvage or restoration of major function, and such major function was not restored or expected to be

---

[4]Listing 1.00.M states that "[u]nder continuing surgical management, as used in 1.07 and 1.08, refers to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1.00M.

11

restored within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1.08. Loss of function is defined, for the purposes of the Listings, as the inability to ambulate effectively on a sustained basis for any reason. *Id.* at 1.00.B.2.a. The inability to ambulate effectively is defined as an extreme limitation of the ability to walk 1.00.B.2.b.(1).[5] The ALJ concluded the Plaintiff is not subject to any impairment or combination of impairments that meets or equals the requirements of the Listings, including Listing 1.08. The ALJ noted that the medical evidence did not reflect all of the findings specified in the Listing of Impairments, nor did the clinical findings, x-rays, or laboratory tests show the severity contemplated in the Listings. Tr. 17.

The Court finds the ALJ did not err when she found that Plaintiff's impairment did not satisfy the criteria for the Listing of Impairments, including Listing 1.08. "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir.2000) (citation omitted). "[C]onflicts in the evidence, including the medical evidence, are to be resolved, not by a reviewing court, but by the ALJ." *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir.1985).

Reports following the Plaintiff's surgeries for tumor excision and extensor tendon lengthening, dorsal capsulectomy and debridement are consistent with the ALJ's determination that

---

[5]Listing 1.00.B.2.b(2) provides: "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Pt. 404, Subpt. P, App.1.00.B.2.b(2).

the Plaintiff is not subject to any impairment that meets or equals the requirements of the Listings. As set out in the summary of the medical evidence, on April 1, 2003, the Plaintiff underwent surgery to excise giant cell tumors from her right foot. A laboratory report from the Austin Radiological Association approximately three months later, dated June 16, 2003, noted that no bony or soft tissue abnormalities were visible, indicating a normal right foot. Tr. 156. The orthopedic report from Orthopedic Surgery Associates also dated June 16, 2003, under the heading "X-RAYS" noted, "See report from Austin Radiological Association of the right foot dated June 16, 2003." The ALJ noted that this report diagnosed the Plaintiff with tendinitis extensors to the right foot and complications of surgery-right foot. Tr. 16, 152. Results from another MRI reported in Dr. Carter's Progress Notes dated March 5, 2004, indicated no new tumor. Tr. 185.

Further, with regard to the tendinitis problems Plaintiff experienced after the tumor excisions, on July 9, 2004, the Plaintiff underwent extensor tendon lengthening and a dorsal capsulectomy and debridement for an extension deformity of the right toe. Tr. 178. Dr. Carter's Progress Notes dated July 23, 2004, indicated that Plaintiff's toe was in excellent position. Tr. 181. A report from Brackenridge Hospital dated November 16, 2004, diagnosed Plaintiff with acute exacerbation foot pain and instructed Plaintiff to follow up with the Austin Clinic as needed. No further references were made regarding Plaintiff's toe or foot. Tr. 205-206. Furthermore, evaluations following the Plaintiff's tumor excision indicate the Plaintiff was able to ambulate effectively, consistent with the ALJ's determination that the Plaintiff is not subject to any impairment that meets or equals the requirements of the Listings.

Moreover, results of a consultative exam conducted on October 20, 2003, indicated that Plaintiff walks with an intermittent slight minimal limp, and noted the Plaintiff did not use any

assistive devices. Dr. Perkins concluded that Plaintiff appeared capable of sitting, standing for limited periods of time, moving about for short distances, handling objects, hearing, and speaking. Tr. 140-141. An evaluation by Dr. Desai, dated October 21, 2003, indicated the limitations suggested in the October 20, 2003, exam were too restrictive. Dr. Desai's notes indicate the Plaintiff was capable of: occasionally lifting/carrying 20 pounds, frequently lifting/carrying 15 pounds, standing/walking with normal breaks for about 6 hours in an 8-hour workday, sitting with normal breaks for about 6 hours in an 8-hour workday, limited ability to push/pull in the lower extremities attributed to pain the right foot and stillness of toes. Tr. 130, 135.

The ALJ concluded Plaintiff can perform daily activities without assistance, and that Plaintiff was capable of walking one block before pain begins, climb one flight of stairs, stand for fifteen minutes, and had unrestricted use of her hands. Tr. 16. This conclusion is consistent with the medical records and Plaintiff's own testimony at the hearing.

In social security appeals, the court "does not re-weigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner, not the Court, to resolve. *Id*. The Court finds that the ALJ did not err in determining the Plaintiff's impairment did not satisfy the criteria for the Listing of Impairments, including the Plaintiff's suggested Listing 1.08. The medical evidence in the record supports the conclusions reached by the ALJ. While the Plaintiff's foot impairments are serious, they do not reach the level contemplated in the listings argued by Plaintiff.

> **2.  Did the Commissioner properly consider evidence of the Plaintiff's residual functional capacity to perform the requirements of her past relevant work, including the Vocational Testimony?**

Plaintiff argues that the ALJ failed to properly consider the vocational expert's testimony in determining that Plaintiff was not disabled. Specifically, Plaintiff argues that the ALJ ignored the vocational expert's testimony that the need for an employee to prop up a leg up to 14 to 15 inches and the need to wear flip-flop sandals would not be tolerated in most work environments.

The Court first notes that it is the ALJ's duty, not the vocational expert's, to assess a claimant's residual functional capacity. *Randall v. Sullivan*, 956 F.2d 105, 106 (5th Cir.1992). Moreover, the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985). Therefore, the ALJ was free to conclude based on the medical evidence that Plaintiff was not actually required to prop her leg up 14 to 15 inches as suggested by the Plaintiff. The medical evidence supports the ALJ's opinion on this issue. No medical report or evidence indicates the Plaintiff was instructed to prop her leg up 14 to 15 inches. The Plaintiff testified that during the time period she was not on Medicaid, she repeatedly called a nurse complaining of pain. The nurse informed Plaintiff that there was nothing she could do until Plaintiff made an appointment to see a doctor. Plaintiff testified that the nurse told her that if Plaintiff's foot was still painful and swollen, then Plaintiff could elevate it up above her hip. Tr. 263. There is no medical evidence in the record showing that Plaintiff was instructed to prop her leg up 14 to 15 inches. The most recent medical record in evidence regarding Plaintiff's foot pain was the November 16, 2004, emergency room report from Brackenridge Hospital. Plaintiff was diagnosed with acute exacerbation foot pain and

was instructed to take certain pain medication and to follow-up with Austin Clinic as needed. No mention was made directing Plaintiff to prop her foot up. Tr. 205.

The Plaintiff testified that she was unable to wear socks or any kind of shoe other than flip-flop sandals, due to her toe pain. Tr. 264. No medical report or evidence indicates the Plaintiff was instructed to wear open toe flip-flop sandals. The orthopedic examination report dated June 23, 2003, suggested that Plaintiff would need a stiff-soled shoe for an ambulatory device. Tr. 160. Dr. Carter's progress notes dated February 4, 2004, indicate the Plaintiff was to be put in an "orthotic." Tr. 186. As with the instruction to prop the Plaintiff's leg up, no mention of footwear was made in the most recent medical record in evidence regarding the Plaintiff's foot pain. Tr. 205.

Based upon the foregoing, the Court finds that the ALJ properly considered evidence of the Plaintiff's residual functional capacity to perform the requirements of her past relevant work, including the testimony of the vocational expert.

### 3.     Did the Commissioner properly consider evidence submitted after the date of the ALJ's decision?

Plaintiff argues the Commissioner's final decision in denying Plaintiff's claim was not based on substantial evidence because the Commissioner failed to properly consider new evidence submitted to the Appeals Council. This additional evidence included:

> 1) a report from Austin Endoscopy Center dated January 22, 2003, indicating Plaintiff underwent colonoscopy-biopsy; notes indicate a final impression of gastritis. Tr. 243.
> 2) a pathology report from Clinical Pathology Laboratories, Inc. dated January 23, 2003, indicating a diagnosis of severe chronic gastritis. Tr. 241.
> 3) treatment record from Austin General Medical Clinic dated April 27, 2004, indicating the Plaintiff complained of arthritis in her right foot and needed a refill on pain medication; notes indicate Plaintiff had chronic foot pain from surgery and was referred to Dr. Carter. Tr. 230-231.

4) an emergency room report from St. David's Medical Center dated January 31, 2005, indicating diagnoses of acute exacerbation of chronic low back pain, lumbar pain/strain, and mild sciatica by history without evidence of neurologic deficit at this time. Tr. 239.

5) treatment record from Austin General Medical Clinic dated February 11, 2005, indicating Plaintiff complained of low back pain that ran down her leg; notes indicate an impression of lower back pain and a treatment plan of lumbar spine MRI and referral to the Pain Clinic. Tr. 232.

6) an MRI report dated February 17, 2005, from Central Park Imaging Center, indicating the following findings: no anterior-posterior subluxation, normal conus medullaris, no marrow edema was seen, visualized paraspinous soft tissues were unremarkable; notes indicate mild spondylosis at L5-S1 with associated annular tear and shallow central protrusion, no central stenosis, and suspected spina bifida occulta. Tr. 228-229.

7) treatment record from Austin General Medical Clinic dated February 18, 2005, indicating the MRI scan was reviewed with the Plaintiff; notes indicate an impression of lower back pain and a referral to Dr. Wills at the Pain Clinic. Tr. 233.

8) treatment record from Austin General Medical Clinic dated March 11, 2005, indicating a referral to the pain clinic and a refill on pain medications. Tr. 234.

The notice of denial of Plaintiff's Request for Review from the Appeals Council indicated that in reviewing and denying the Plaintiff's case, the Appeals Council considered the Plaintiff's reasons for disagreeing with the decision "and the additional evidence listed on the enclosed Order." Tr. 4. The Appeals Council found the Plaintiff's reasons for disagreeing with the ALJ's decision and the additional evidence submitted did not provide a basis for changing the ALJ's decision. Tr. 4-5.

Plaintiff concedes the Appeals Council denial states the Council considered the evidence submitted with the Request for Review. However, Plaintiff argues the absence of a narrative discussion of the evidence, explaining why the evidence was given little or no weight indicates the Commissioner failed to properly consider the evidence and constitutes reversible error. Plaintiff argues that the Fifth Circuit's decision in *Falco v. Shalala*, 27 F.3d 160, 163 (1994), requires the Commissioner to offer an adequate explanation and sufficient analysis in the issued denial notice. The Plaintiff in *Falco* urged the Court to adopt a Third Circuit rule requiring an ALJ to specifically

articulate the evidence supporting his decision and to discuss the evidence rejected. The Fifth Circuit found this "rigid approach is unnecessary." *Falco*, 27 F.3d at 163. The Court noted that it had set its own strictures, citing for example *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988), in which the Court explained, "when the evidence *clearly favors* the claimant, the ALJ must articulate reasons for rejecting the claimant's subjective complaints of pain." *Id*. (emphasis added).

In the present case, the evidence in the record does not *clearly favor* the claimant. The notice of denial from the Appeals Council clearly indicates the Council considered the additional evidence submitted by the Plaintiff and that this additional evidence did not provide a basis for changing the ALJ's decision. Tr. 4-5. The Commissioner was not required to provide a narrative discussion regarding the weight accorded to the additional evidence and therefore the Court finds the Commissioner properly considered evidence submitted after the ALJ's decision.

Based upon the foregoing, the Court finds that the ALJ's decision was based upon substantial evidence and was based upon an application of the proper legal standards. Accordingly, the final decision of the Commissioner should be AFFIRMED.

## VII. RECOMMENDATION

The Magistrate Court **RECOMMEND**S that the District Court **AFFIRM** the final decision of the Commissioner and **ENTER JUDGMENT** in favor of the Defendant.

## VIII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 28th day of September, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE